IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| WILLIAM MEIGS, | ) | CV 10-45-BLG-RFC |
| | ) | |
| Plaintiff, | ) | ORDER DENYING |
| | ) | GALLATIN COUNTY'S MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| vs. | ) | |
| | ) | |
| CITY OF LIVINGSTON, PARK COUNTY, | ) | |
| OFFICER JOSEPH HARRIS, and | ) | |
| GALLATIN COUNTY | ) | |
| | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

Plaintiff William Meigs has filed this lawsuit for personal injuries sustained after he was arrested in Livingston, Montana by a Livingston Police Officer pursuant to a bench warrant issued by Gallatin County, Montana. Pending before the Court is Defendant Gallatin County's motion for summary judgment. Gallatin County seeks judgment as a matter of law that it cannot be held liable for the acts of its Justice of the Peace and because there is no evidence the other Defendants were acting as its agents when Meigs was arrested and detained. Since Meigs does not challenge the issuance of the warrant and a reasonable jury could conclude that Officer Harris was an "agent" of Gallatin County, its motion must be denied.

1

## II. FACTUAL BACKGROUND

On May 9, 2009, Plaintiff William Meigs was arrested at the True Value Hardware store in Livingston, Montana by City of Livingston Police Officer Joseph Harris. The bench warrant was issued by the Gallatin County Justice of the Peace because Meigs did not attend the alcohol and drug counseling class imposed as part of his sentence for misdemeanor possession of marijuana in 2008. Harris testified that the reason he arrested Meigs was his mistaken belief that Meigs was wanted for questioning by the Missouri River Drug Task Force, but the justification for the arrest was the outstanding bench warrant from Gallatin County. The bench warrant commanded Montana peace officers to arrest Meigs at any time day or night and bring him before the nearest and most accessible court to answer the charge of failure to complete drug and alcohol counseling.

Harris asked Meigs if he was going to cooperate, which Meigs agreed to do, and the two left the hardware store for Harris's patrol car, where Harris frisked Meigs and handcuffed him behind his back. Harris then drove Meigs to the City-County Building, which includes the Park County Detention Center, as well as the Livingston Police Department and the Park County Sheriff's Office. Meigs was then placed on a bench in a holding area with his hands still handcuffed behind him.

At various times during his arrest and after he was placed on the bench in the

holding area, Meigs complained that his handcuffs were too tight. His complaints were never acted on. After 15 or 20 minutes of searching for the warrant, Harris asked Deputy Pete Adams of the Park County Sheriff's Office to stay with Meigs for a few minutes. Meigs remained seated on the bench with his hands cuffed behind his back.

Soon thereafter, as Adams was looking away from Meigs toward the dispatch area, he heard a thump. Meigs fainted and his face hit the floor. When Meigs regained consciousness, he complained of neck pain and asked to be taken to the hospital. An ambulance arrived within minutes. Meigs was stabilized and taken to Livingston Memorial Hospital.

Meigs was diagnosed with a broken neck and subsequently transported to Billings Clinic for surgery. Meigs asked that Defendants pay his medical bills, but Defendants refused. This lawsuit followed.

## III. ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a

dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

In Count Six of his Amended Complaint, Meigs claims Gallatin County is liable for the wrongful or negligent acts of the City of Livingston, Park County, and Joseph Harris because these Defendants were the actual or ostensible agents of Gallatin County. Gallatin County claims that Meigs's entire case is based on the issuance of the bench warrant by the Justice of the Peace, and the issuance of a warrant is a judicial act for which Gallatin County cannot be liable.

Gallatin County is correct that "[t]he state and other governmental units are immune from suit for acts or omissions of the judiciary." Mont. Code Ann. § 2-9-112(1); *Silvestrone v. Park County,* 170 P.3d 950, 954 (Mont. 2007) (judicial immunity arises whenever the judicial power of the state is put to use in a judicial action and it applies with no stated limitation). But unlike the situation in *Silvestrone,* Meigs is not suing Gallatin County for issuing the warrant or for any act or omission of the judiciary. In fact, Meigs does not challenge the validity of the warrant. Meigs claims that Officer Harris, the City of Livingston, and Park County were acting as agents of Gallatin County when they arrested and held Meigs pursuant to the bench warrant. Section § 2-9-112(1) and the cases interpreting it are therefore inapposite. If Gallatin County's argument was taken to its logical end, it would not be liable for any misdeeds of its officers in effecting an arrest, so long as the arrest was pursuant to a warrant issued by a judicial officer.

"An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." Mont. Code Ann. § 28-10-101. An agency may either be actual or ostensible. Actual agency occurs when the agent is really employed by the principal. Ostensible agency occurs when the principal causes a third person to believe another to be the principal's agent when that person is not really employed by the principal. *Id.* at § 28-10-103(1). An agency may be

5

created by a precedent authorization or a subsequent ratification, *Id.* at § 28-10-201, and no consideration is required. *Id.* at § 28-10-202. "[A] principal is responsible to third persons for the negligence of the principal's agent in the transaction of the business of the agency, including wrongful acts committed by the agent in and as a part of the transaction of business …" *Id.* at § 28-10-602.

Gallatin County argues it is entitled to judgment as a matter of law because Meigs has no facts or evidence in the record supporting the agency claim. But the bench warrant plainly states **"TO ANY PEACE OFFICER IN THE STATE OF MONTANA:** YOU ARE HEREBY COMMANDED to arrest and bring the above named defendant before this Court …" Moreover, there is evidence that Officer Harris told Meigs he was arresting him because there was an outstanding warrant from Gallatin County. Under these facts, a reasonable jury could conclude Officer Harris, Livingston, and Park County were actual or ostensible agents of Gallatin County.

This conclusion is supported by the Montana Supreme Court's decision in *Paull v. Park County*, 218 P.3d 1198 (Mont. 2009). Although Paull was on probation with the Montana Department of Corrections ("MDOC"), he was allowed to live in Florida and was supervised by a probation officer in Florida. Paull violated the terms of his probation, and pursuant to requests and recommendations from the

Florida probation officer, the MDOC, and the Park County Attorney, the Park County District Court issued an arrest warrant, which was executed by Florida. 218 P.3d at 1199-1200.

The Park County Sheriff arranged for Paull to be transported back to Montana by a private prisoner transportation service, which was approved and funded by the State of Montana. On the trip back to Montana, Paull was injured through the negligence of the transport driver. The transportation company was bankrupt, so Paull sued both the State of Montana and Park County. *Paull,* 218 P.3d at 1200.

Although it is not relevant here, the Montana Supreme Court determined Park County was potentially liable because, although the prisoner transportation company was an independent contractor, the company was involved in the inherently dangerous business of prisoner transport and the tort arose from risks caused by engaging in such dangerous activity. *Paull,* 218 P.3d at 1204.

Relevant to this case, the State of Montana was liable because Paull alleged negligence on the part of the prisoner transport company and the transport company was the agent of the State. The Court noted that the prisoner transport company was selected and paid by the State and that the company had no authority to confine and transport Paull until Montana told it to do so. Further, when Paull was arrested in Florida and held "for Montana," the power and responsibility to confine and

transport him arose from the State of Montana. "Without some actual or apparent authority derived from the State, [the prison transport company] had no basis for shackling Paull, confining him, and transporting him across the country." *Paull,* 218 P.3d at 1204. Accordingly, the agency relationship between the State of Montana and the prison transport company imposed upon the State a duty to exercise ordinary care in returning Paull to Montana, and the State was liable for any tortious acts or omissions of its agents undertaking the transportation. *Id.* at 1205.

In the Court's view, *Paull* is on point. Absent the Gallatin County arrest warrant, which "commanded" any Montana peace officer to arrest Meigs any time day or night and bring him before the Gallatin County Justice Court, Officer Harris would have had no authority to arrest Meigs. Since *Silvestrone* is distinguishable, Gallatin County cites no authority to the contrary. Accordingly, under well-established principles of agency law, Gallatin County may be held liable for the tortious acts or omissions of its agents.

Moreover, Montana Code § 2-9-102 provides that "[e]very governmental entity is subject to liability for its torts and those of its *employees* acting within the scope of their employment or duties whether arising out of a governmental or proprietary function except as specifically provided by the legislature …" Although Harris is not technically an "employee" of Gallatin County, the Montana Code

8

defines that term broadly: employee "means an officer, employee, or servant of a governmental entity, including elected or appointed officials, and *persons acting on behalf of the governmental entity in any official capacity temporarily* or permanently in the service of the governmental entity whether with or without compensation. Mont. Code Ann. § 2-9-101(2)(a) (emphasis added). Since a reasonable jury could conclude Officer Harris was acting on behalf of Gallatin County in an official capacity when he arrested Meigs and brought him to the Park County Detention Center, Gallatin County's motion must be denied.

## IV.   ORDER

For those reasons, **IT IS HEREBY ORDERED** that Gallatin County's Motion for Summary Judgment (*doc. 41*) is **DENIED**.

Dated this 13th day of June, 2011.

>  */s/ Richard F. Cebull*_____
>  Richard F. Cebull
>  United States District Judge