IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| WILLIAM MEIGS, | ) | CV 10-45-BLG-RFC |
| | ) | |
| Plaintiff, | ) | ORDER DENYING |
| | ) | PARK COUNTY'S MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| vs. | ) | |
| | ) | |
| CITY OF LIVINGSTON, PARK COUNTY, | ) | |
| OFFICER JOSEPH HARRIS, and | ) | |
| GALLATIN COUNTY | ) | |
| | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

Plaintiff William Meigs has filed this lawsuit for personal injuries sustained after he was arrested in Livingston, Montana by Livingston Police Officer Joseph Harris pursuant to a bench warrant issued by Gallatin County, Montana. Pending before the Court is Defendant Park County's motion for summary judgment. Park County seeks judgment as a matter of law that it is not required to pay Meigs medical bills pursuant to Mont. Code Ann. § 7-32-2224 because (1) he was not in the custody of Park County and (2) the detention center administrator did not determine that Meigs needed medical treatment.

1

## II. FACTUAL BACKGROUND

On May 9, 2009, Plaintiff William Meigs was arrested at the True Value Hardware store in Livingston, Montana by Officer Joseph Harris of the Livingston Police Department. Meigs was subject to a bench warrant for failing to complete a drug education class imposed as part of his sentence for misdemeanor possession of marijuana. Officer Harris escorted Meigs to his patrol car, where he handcuffed him behind his back and put him in the back seat. Harris then drove to the Park County Detention Center ("PCDC"), where he told Meigs to sit and wait on a bench in a holding area/vestibule[1] with his hands still cuffed behind his back. Meigs complained the handcuffs were too tight, but his complaints were ignored. After 15 or 20 minutes, Harris left Meigs in the care of Deputy Pete Adams of the Park County Sheriff's Office. Shortly thereafter, Meigs fainted and fell, breaking his neck when his face hit the floor. The Detention Center's policy is all persons being booked be handcuffed with their hands behind their back.

The PCDC is located in the City-County Building in downtown Livingston. The City-County Building also houses the Livingston Police Department, the Park

---

[1] Meigs claims he was placed in a holding room, but, consistent with its argument that Meigs was never in the custody of the Detention Center, Park County refers to the room as a vestibule. In the Court's view, the term holding area is more accurate and that term will be used in this Order.

County Sheriff's Office, as well as courts, the fire department, and other city and county government offices. Although Park County owns 63.4% of the City-County Building and the City of Livingston owns 36.6%, there is no allocation of ownership of specific areas of the building and neither the City nor the County knows whether it owns the holding area.

Livingston Police Chief, Darren Raney, testified he doesn't know where the Detention Center starts and stops, doesn't know whether the holding area is part of the Detention Center, and that there are no documents which define its boundaries. The County's rule 30(b)(6) witness testified that the holding area was not part of the Detention Center because that is what she was told by an unknown person when she was given a tour of the facility when she took her job. The map of the "City County Complex" supplied to the Court does not even indicate there is a "Detention Center," but merely identifies the "cell blocks." Officer Harris testified that the Sheriff's Department and the Detention Center are "one in the same." The Detention Center is staffed and administered by the Park County Sheriff's Office.

The cellblocks are located on the bottom floor below the dispatch center, the Livingston Police Department, the Park County Sheriff's Office, and the holding area where Meigs fell and broke his neck. The cellblocks are usually accessed by

an elevator adjacent to the holding area.

The holding area is used by the Livingston Police and Park County Sheriff's Office to confine prisoners before they are booked into the jail. It contains gun lock boxes, a "sharps" box for prisoner belongings, a microphone, video cameras, and two metal benches. The only entity with access to the lock box for prisoner property is the Detention Center, the same entity that had the gun lock boxes and the metal benches installed. Similarly, the video cameras and microphones feed to monitors located in the Detention Center. Detention Center staff maintain and monitor the cameras. The Sheriff's Office, which runs the Detention Center, had the cameras installed.

The Detention Center administrator wanted the benches installed in the holding area so there was a place for officers to hold the prisoners before they were taken downstairs to the cellblocks. Each bench has a D-Ring on the front so prisoners can be handcuffed to the bench.

In his Answer, Officer Harris admits that he "transported Plaintiff to the Park County Detention Center, that the Plaintiff sat on a bench in the holding room area, that the holding room was normally locked, and for a time Plaintiff remained handcuffed, was in custody, and was not free to leave." In his Incident Narrative, Harris said he transported Meigs "to the jail."

4

The City of Livingston admits in its Answer that Meigs was transported by Officer Harris to the Park County Detention Center and that Meigs was an inmate there, but the City denies Meigs was in its custody when he broke his neck. The City does not know whether Meigs was in the Detention Center when he broke his neck, or even whether he was in Officer Harris's custody.

Park County denies Meigs was in its custody when he broke his neck, claiming Meigs was in the City's custody. Officer Harris claims Meigs was in Deputy Adams's custody when Meigs was injured. Deputy Adams testified that he did not know if Meigs was in custody when he was handcuffed to the bench in the holding area.

It is the policy of both the Park County Sheriff's Office and the Livingston Police that persons who are injured, or who ask to see a doctor, be taken to the hospital. The Park County Detention Center's policy is also that all persons who request medical care are taken to the hospital, regardless of whether the administrator signs off on it. Along these lines, Deputy Adams testified that when Meigs claimed neck pain after he fell, Adams called an ambulance. Adams also testified that he reported Meigs' injury to the Detention Center administrator, but he did so after Meigs was already in the hospital and he had completed his report. The Detention Center administrator, Captain Jay O'Neill, was not on duty and not

present when Meigs was injured on Saturday May 9, 2009.

### III.   Analysis

Park County argues it is entitled to judgment as a matter of law on Counts IV (negligence per se) and V (strict liability) because the statute Meigs relies upon to support these claims, Mont. Code. Ann. § 7-32-2224, addressing the payment of inmate medical costs, is inapplicable. Specifically, Park County claims Meigs was not in the custody of Park County at the time he was injured and even if he was, the "the detention center administrator" did not "determine" that Meigs needed care, so it cannot be held liable. As demonstrated by the following analysis, genuine issues of material fact preclude summary judgment.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

Montana Code Annotate § 7-32-2224, which according to this Court's Westlaw searches has never been cited by any court, provides in relevant part:

> (2) When the inmate is in the custody of a county detention center and the detention center administrator determines that the inmate requires medical treatment, the county or the arresting agency is responsible for medical costs associated with:
>     (a) conditions that are not preexisting; [or]
>     (b) injuries incurred by the inmate:
>         (i) while in the custody of the detention center if the injuries are the result of an accident, an assault by another inmate, or negligent or intentionally torturous acts committed by the detention center administrator or the administrator's staff;

***

>  (3) In order to determine which entity is responsible for medical charges that are not the responsibility of the inmate, the following applies:
>
>> (a) If the arresting agency is a law enforcement agency whose jurisdiction is limited to the county boundaries of the county or a municipality in the county where the detention center is located, then the county is responsible.
>>
>> ***
>>
>> (c) If a municipality commits a person to the detention center of the county in which the municipality is located for a reason other than detention pending trial for or detention for service of a sentence for violating an ordinance of that municipality, then the county in which the municipality is located is responsible.

Park Count focuses on § (2) and argues that Meigs was not in the custody of the Park County Detention Center when he fainted and broke his neck on May 9, 2009. In support, Park County cites Captain Jay O'Neil's deposition testimony that an individual is not in the custody of the Detention Center until he has been booked in to the facility. The Court notes that Park County's Rule 30(b)(6) Fed.R.Civ.P. witness testified similarly.

The facts alleged in Meigs's Statement of Genuine Issues (*doc. 43*), however, make clear that there are genuine factual issues as to whether Meigs was "in the custody" of the Park County Detention Center. Specifically, considering that (1) the holding area is a locked room connected to the elevator that leads to the cell blocks; (2) the cameras and microphones in the holding room are solely

8

monitored by detention center personnel; (3) the lock boxes for prisoner property are only accessible by Detention Center staff; and (4) the metal benches with the D-Rings were installed at the behest of the Detention Center administrator, there are sufficient facts from which the jury could conclude that Meigs was in the custody of the Park County Detention Center.

Moreover, Park County employs a simplistic view of the term "detention center," apparently believing that Meigs was required to be in the custody of the "Park County Detention Center," when the statute refers to a "detention center," a term that has a specific definition in the relevant part of the Montana Code. As that terms is used in § 7-32-2224, "detention center" "means a facility established and maintained by an appropriate entity for the purpose of confining arrested persons or persons sentenced to the detention center." Mont. Code Ann. § 7-32-2241(1). Regardless of whether the holding area is part of the Park County Detention Center, at the very least there are genuine issues of material fact as to whether the holding area is a "detention center."

Finally, it appears Park County may also be liable for Meigs's medical charges under §§ 7-32-2224(3)(a) & (c). Section 7-32-2224(3) is applicable if the medical charges are not the responsibility of the inmate pursuant to § 7-32-2245(2). There is no evidence before the Court that Meigs' injuries were

pre-existing, self-inflicted, incurred during a crime or while resisting arrest. *Id.* at §§ 7-32-2245(2)(a), (b), & (d). Further, there is evidence from which a jury could conclude the injuries were incurred as a result of negligence or intentionally tortious conduct at the hands of law enforcement and that the injuries are the responsibility of Park County pursuant to § 7-32-2224(2). *Id.* at §§ 7-32-2245(2)(c) & (e).

With respect to Park County's argument that § 7-32-2224 also does not apply because Captain O'Neill, "the detention center administrator," did not determine that Meigs required medical treatment, Meigs notes that Captain O'Neill was not at the facility because it was a Saturday. Under Park County's interpretation, counties could avoid paying inmate medical bills pursuant to § 7-32-2224 so long as the injury occurred on a weekend or when the detention center administrator was at lunch. More importantly, Captain O'Neill testified that inmates who request medical attention need to be cleared by medical professionals and that the Park County Detention Center has a policy that seriously injured inmates must be medically cleared by a medical professional prior to being booked into the facility. Accordingly, at the very least there is a genuine issue of fact as to whether the detention center administrator determined that Meigs needed medical treatment.

## IV. ORDER

For those reasons, **IT IS HEREBY ORDERED** that Park County's Motion for Summary Judgment (*doc. 31*) is **DENIED**.

Dated this 15th day of June, 2011.

>*/s/ Richard F. Cebull*_____
>Richard F. Cebull
>United States District Judge